The Honorable Guy Hunt Governor of Alabama State House Montgomery, Alabama Dear Governor Hunt:
We acknowledge receipt of your letter dated January 5, 1988, wherein you requested our opinion as to certain constitutional questions relative to Act No. 87-363 of the 1987 Regular Session of the Alabama Legislature. That letter, in pertinent part, reads as follows:
“The Local Constitutional Amendment Commission met on Tuesday, December 8,1987 and voted unanimously to seek an Advisory Opinion from the Supreme Court of Alabama regarding Act No. 87-363 of the 1987 Regular Session of the Alabama Legislature....
“I, Guy Hunt, Governor of Alabama, pursuant to Section 12-2-10, Code of Alabama, 1975, hereby request a written opinion of the Justices of the Supreme Court of Alabama on an important constitutional question arising under Act No. 87-363 relating to Houston County *957 and proposing an Amendment to the Constitution of Alabama levying a one (1) mill property tax on real property located in Houston County, excluding property located in the City of Dothan.
“Specifically I request your opinion as follows:
“1. If the Local Constitutional Amendment Commission does not unanimously approve the proposed amendment (Act No. 87-363), is it then submitted for approval by a majority vote of the qualified electors statewide or is the proposed amendment defeated for lack of unanimous approval by the Commission? See Amendment No. 425, Constitution of Alabama 1901, and Section 2 of Act No. 87-363.
“2. If the Local Constitutional Amendment Commission unanimously approves the proposed amendment, may the amendment become adopted as a valid part of the Constitution under the procedures set out in Amendment No. 425 even though it relates only to a part of Houston County which is not a political subdivision?”
Section 12-2-10, Ala.Code (1975), authorizes the Justices of the Supreme Court “within permissible limits ... to give advisory opinions on important constitutional questions” propounded to them by the Legislature and the Governor. Opinion of the Justices No. 280, 417 So.2d 936 (Ala.1981). Generally, we make every effort to answer such questions; however, public policy and the exercise of sound judicial discretion require that we decline to answer such questions in certain well-recognized situations. Because your questions fall within one or more of those situations, we respectfully and regretfully decline to answer them.
We reach this conclusion because of the nature of the two questions. Both questions essentially ask us to interprétate Amendment 425 of the Constitution of Alabama.[1] This provision of the Constitution, which has never been interpreted by this Court, allows constitutional amendments affecting only one county to be made by an appropriate county-wide referendum, rather than by a state-wide referendum, as was previously required. As the following discussion will show, we must decline to answer these questions in the interest of justice.
The first question is only incidentally concerned with Act No. 87-363, a proposed amendment affecting only residents of Houston County. On its face, it essentially concerns the relationship of Amendment 425 with other provisions of the Constitution, including provisions relating to the separation of powers in state government. Thus, this question cannot be regarded as anything other than a request for an advisory opinion interpreting Amendment 425, rather than Act No. 87-363.[2]
*958 The second question differs from the first in that it does concern the constitutionality of the act in question. Specifically, the question concerns whether the voting scheme advanced in Act No. 87-363, which excludes Dothan residents from the proposed referendum, conforms with the mandates of Amendment 425. The second question is like the first, however, in that it requires an interpretation of Amendment 425. Moreover, as even a brief reading of that amendment will demonstrate, it presents no small difficulty in regard to its interpretation. In particular, Amendment 425 provides that final approval of a proposed amendment to the Constitution affecting only one county is to be “by a majority vote of the qualified electors of the county and in any political subdivision thereof affected by such proposed amendment.” Although it could be argued that it was intended that the residents of designated political subdivisions within a county be excluded from voting if the proposed amendment does not “affect” them, we cannot say with certainty that such a reading of Amendment 425 necessarily flows from its language. It also could be argued that the language to the effect that amendments must be approved by both county electors and those electors “in any political subdivision thereof affected by such proposed amendment” was intended to emphasize that an absolute county-wide vote is required — that the use of the term “qualified electors of the county” was, in fact, not to be read as allowing the exclusion of electors residing in political subdivisions. We cannot say that either of these interpretations is the correct one, or that either is an incorrect interpretation.[3]
*959 We have no prior case law interpreting Amendment 425; moreover, this request for an advisory opinion has been presented to us without the well-developed briefs and trial record that would come from the adversarial testing of the significant constitutional issues presented. Accordingly, the interpretational difficulties presented by these two questions counsel against our answering them, lest we risk creating confusion of constitutional dimensions in our haste to resolve the undeveloped underlying issues. In Opinion of the Justices No. 280, 417 So.2d 936 (Ala.1981), involving a situation so reminiscent of the one now before us that it is controlling, we noted:
“[I]n the spirit of harmony and cooperation, a majority of the individual Justices have frequently exercised [the] privilege [of giving advisory opinions]. However, this procedure is not without difficulty in that the opportunity is not generally available for opposing views to present their respective positions, nor are pertinent facts presented as is usual in the adversary nature of our judicial system. The Supreme Court’s primary function is one of appellate review, exercised in the context of adversary proceedings. The very nature of our judicial process mandates that decisions be rendered only after all sides have presented their respective views, together with appropriate legal precedent and authority supporting such views....
“Although pending legislation, involving important constitutional issues, falls within the purview of this statutory prerogative, expressions of opinions, hastily and abstractly considered, may well pose a greater danger of confusion and uncertainty than the exercise of judicial restraint in declining to respond to the questions submitted....
“... [W]e are compelled to decline to answer the questions here submitted. Because of the complexity of the constitutional issues, the absence of any clear apparent authority readily discernible from a plain reading of the pertinent language of the present State Constitution and statutes, and the serious legal and political implications here involved, our considered judgments constrain us to await the appropriate adversary context of a more deliberative litigated proceeding in which to address and postulate a definitive response to these issues.”
417 So.2d at 936-37. Likewise, we must decline to answer the questions now before us.
Respectfully submitted, C.C. TORBERT, Jr. Chief Justice RICHARD L. JONES JANIE L. SHORES OSCAR W. ADAMS, Jr. J. GORMAN HOUSTON, Jr. HENRY B. STEAGALL II Associate Justices

. That amendment reads as follows:
"Any proposed constitutional amendment which affects or applies to only one county shall be adopted as a valid part of the constitution by a majority vote of the people of the county and in any political subdivision thereof so affected, provided that such proposed amendment has first been unanimously approved by at least a three-fifths vote of the elected members of each house and unanimously approved by a Local Constitutional Amendment Commission composed of the Governor, Lieutenant Governor, Attorney General, Secretary of State and Speaker of the House of Representatives and notice of such election, together with the proposed amendment shall be given by proclamation of the Governor, which proclamation shall be published once a week for four successive weeks next preceding the day appointed for the election in each newspaper qualified to run legal notices in the county affected. The proposed local constitutional amendment shall then be approved by a majority vote of the qualified electors of the county and in any political subdivision thereof affected by such proposed amendment voting in a referendum election held for the purpose of determining if such proposed amendment shall become adopted as a valid part of the Constitution.”

. The Justices normally decline to answer a question that does not concern the constitutionality of proposed legislation (i.e., a bill introduced and pending in the Legislature). Opinion of the Justices No. 308, 449 So.2d 239 (Ala.1984); Opinion of the Justices No. 242, 356 So.2d 172 (Ala.1978). Exceptions have been recognized. An advisory opinion may be given to the Governor when the Governor is required to act on legislation that raises constitutional issues. Opinion of the Justices No. 219, 294 Ala. 604, 320 So.2d 622 (1975). Also, in Opinion of the Justices No. 212, 291 Ala. 581, 285 So.2d 87 (1973), a majority of the Justices expressed their opinion to the Governor concerning the constitutionality of an act that had already been passed by *958 the Legislature and signed into law by the Governor. Several Justices dissented, stating that the only exception to the well established rule that advisory opinions will not be given after the fact is when one is necessary for the guidance of the Governor in taking some affirmative action required by the statute. The dissenting Justices stated that they did not think the questions propounded were the proper subject of an advisory opinion because the statute in question was merely prohibitory and did not require any affirmative action on the part of the Governor. See, also, Opinions of the Justices No. 16, 225 Ala. 359, 143 So. 345 (1932).
The first question in your letter does not concern the constitutionality of pending legislation. Neither does it concern legislation (i.e., Act No. 87-363) requiring action by the Governor that itself raises constitutional issues. Instead, as previously stated, it solicits our interpretation of Amendment 425. We recognize that our interpretation of that amendment would be of guidance to the Local Constitutional Amendment Commission, of which the Governor is a member, and, thus, could be considered the proper subject of an advisory opinion. See Opinion of the Justices No. 212, 291 Ala. 581, 285 So.2d 87 (1973), and Opinions of the Justices No. 16, 225 Ala. 359, 143 So. 345 (1932). Even so, we do not view this particular matter as one that should be considered pursuant to a request for an advisory opinion, for the reasons that will become apparent later in this opinion.

. Although we cannot at this time answer this second question, we would note that the proposed amendment (i.e.. Act No. 87-363) would appear to be invalid under either of these interpretations. The Act provides in pertinent part as follows:
"Section 1. The following amendment to the Constitution of Alabama of 1901 is proposed and shall become valid as a part of the Constitution when all requirements of Amendment 425 of the Constitution of Alabama of 1901 are fulfilled:
"PROPOSED AMENDMENT
"There is hereby levied in Houston County, in addition to any taxes now authorized or that may be hereafter authorized by the Constitution and laws of Alabama, a fire protection tax of one mill, except the City of Dothan. The fire protection tax levied herein shall be based upon the value of real and personal property assessed by affected property owners, as shown on the records of the tax assessor of Houston County, Alabama, and shall be assessed and collected as are all ad valorem taxes in the county. The amount collected each year from assessment of this fire protection tax shall be paid to the Houston County Commission and used for fire fighting and fire protection purposes. If a majority of the qualified electors of said county, except the City of Dothan, participating in the election on the ratification of this amendment shall vote for the ratification of this amendment, then the approval of this amendment as expressed by the vote in said county in favor of its ratification shall, of itself, authorize the levy and collection of the tax for fire protection purposes in said county for four years, commencing with the levy for the tax year for which taxes will become due and payable on October 1, 1988.
"Each four years thereafter, if a petition is submitted by ten percent of the registered voters residing in said tax area calling for an election as to whether the said tax shall continue to be levied, the judge of probate shall *959 call an election and the question presented to the electors shall be as follows:
" ‘Do you favor continuation of a tax for fire protection and prevention on property located in Houston County, excluding the City of Do-than? Yes_No_’ If a majority of the electors vote 'Yes’ at the election, the provisions hereof shall remain effective. If a majority of the electors vote ‘No’ at the election, the provisions of this amendment shall become inoperative, null and void.’”
The Act, therefore, by its terms, excludes Do-than residents from the proposed referendum. Accordingly, it may exclude some voters "affected” by the proposed amendment, because there is a possibility that some of the Dothan residents own land outside the city but in the county. Although the tax would affect only property located outside Dothan, these voters would be "affected” by this change. Nevertheless, they are not allowed to vote under the Act. Under the first interpretation of Amendment 425 noted above, therefore, this scheme would appear to be invalid, although we cannot definitively make that determination at this time. Alternatively, Act No. 87-363 would also appear to be invalid under the second interpretation noted above, if that interpretation were to be deemed the correct one. As to whether there is another interpretation of Amendment 425 that is to be preferred over the two noted in this opinion, we can at this time make no determination.