*389 To the Members of the Senate and the House of Representatives
State Capitol
Montgomery, Alabama
Dear Senators and Representatives: .
We are in receipt of House Resolutions 20, 21 and 77, sponsored by Representative Gafford, House Resolution 119 sponsored by Representative Manley, and Senate Resolution 20 sponsored by Senator Cook. All of these resolutions request opinions of the Justices of the Supreme Court relating to legislative procedure regarding certain specified constitutional provisions. We can summarize these requested opinions as follows:
House Resolution 20 inquires whether the substitution of a proposed constitutional amendment to replace a statutory bill conflicts with Art. 4, Section 61, of the Constitution. House Resolution 21 poses the opposite question — whether the substitution of a statutory bill to replace a constitutional amendment conflicts with said Section 61 of the Constitution. House Resolution 77 relates to pending House Bill 414. House Bill 414 proposes to establish legislative procedure to make bills relating to crimes and offenses the paramount order of business, unless the House or Senate by resolution adopted by a three-fifths vote of the elected membership declares otherwise. House Resolution 77 poses the question whether the three-fifths voting requirement of House Bill 414 violates Sections 63 and 64 of our Constitution. House Resolution 119 also asks whether the three-fifths voting requirements of Act 81-953 contravene the provisions of Sections 63 and 64 of the Constitution. In addition, this resolution also requests our opinion whether Act 81-953 supersedes and relieves the Legislature from the restrictive procedural mandates of Code 1975, § 41-20-10(a) (provisions of the “Alabama Sunset Law”). Senate Resolution 20 refers to another Senate resolution which proposes to exempt legislative consideration of Senate Bill 41 from the restrictive provisions of Section 1(C) of Act 81-953, inquiring of the Justices whether the provisions of Section 1(C) violate Sections 63, 64 and 66 of the Constitution.
Considering all of the resolutions and the various questions posed therein, it is apparent that both Houses of our Legislature are concerned with the proper application of the provisions of Act 81-953, First Special Session, 1981 (commonly referred to as the “budget isolation bill”), as those provisions purport to control and restrict the business of the Legislature now in process in its 1982 Regular Session. Act 81-953 is a general law which in summary establishes a paramount duty on the Legislature to consider and pass bills making “basic appropriations” and to present such bills to the Governor before any other bill can be “signed by either the presiding officer of the House or Senate and transmitted to the other House....” Act No. 81-953, § 1(C), Acts of Alabama, 1981.[1] The Legislature in its wisdom also provided an exception to said paragraph (C) of section 1 as follows:
*390 “[A]nd provided further, that following adoption, by vote of either house of not less than three-fifths of the members elected to that house, of a resolution declaring that the provisions of this paragraph (C) shall not be applicable in that house to a particular bill, which shall be specified in said resolution by number and title, the bill so specified may proceed to final passage therein.”
One of the central issues addressed by these several resolutions concerns Art. 4, Section 61, of the Alabama Constitution of 1901, which provides:
“No law shall be passed except by bill, and no law shall be so altered or amended on its passage through either house as to change its original purpose.”
House Resolutions 20 and 21 specifically request our opinion as to whether a bill proposing a statute may be substituted for a bill proposing a constitutional amendment, and conversely, whether a bill proposing a constitutional amendment may be substituted for a bill proposing a statute without violating the provisions of § 61.
It is interesting to observe that this same issue was presented to the Justices of the Supreme Court by Senate Resolution 42 in the First Special Session, 1981, while the Senate was considering House Bill 38 (the bill which proposed and resulted in the enactment of Act 81-953). Senate Resolution 42 was adopted by the Senate on August 13, 1981; however, on the same day the Senate took final action on House Bill 38, and accordingly, we were without authority to *391 answer the request for an advisory opinion since this legislation was not then a matter “pending” before that legislative body. Opinion of the Justices, No. 281, 410 So.2d 384 (Ala.1981). See, Code 1975, § 12-2-10; Opinion of the Justices, No. 281, 410 So.2d 1055 (Ala.1980); Opinion of the Justices, 294 Ala. 582, 319 So.2d 709 (1975); Opinion of the Justices, 286 Ala. 156, 238 So.2d 326 (1970).
The statute authorizing the Justices of this Court to render advisory opinions was enacted into law in 1923. Code 1975, § 12-2-10 [see, Act No. 43, Acts of Alabama, 1923], In response to the first request for an advisory opinion, the Justices of this Court carefully considered the constitutionality of that act, and in an opinion by Justice McClellan, concurred in by Chief Justice Anderson and Associate Justices Somerville, Gardner and Thomas, determined that such a procedure was constitutionally appropriate. See, Opinions of the Justices, 209 Ala. 593, 96 So. 487 (1923). In that opinion, the majority opined the following:
“Interpreting the act according to its manifest effects, these conclusions must, of necessity, prevail: (a) That the act does not at all contemplate the advice or the advisory opinions of the Justices upon any matter relating to the wisdom, desirability, or policy of prospective legislative or executive action; (b) that the merely advisory opinions contemplated are those of the individual Justices, not of the Supreme Court of Alabama in its judicial capacity; (c) that specific inquiries, within the intent of the act, must involve or concern concrete, important constitutional questions upon matters or subjects of a general public nature, as distinguished from questions involved in the ascertainment or declaration of private right or interest; (d) and that responses to questions within the purview of the act are designed to be advisory, consultative only, not concluding or binding the Governor or the House or Houses propounding inquiries or the Justices responding thereto.”
209 Ala. at 594, 96 So. 487.
A strong and well reasoned dissent by Associate Justices Sayre and Miller pointed out that the legislation authorizing advisory opinions was not for the purpose of helping the Legislature overcome constitutional deficiencies in legislation pending before the Alabama Senate and House of Representatives, but instead the substance of the requests would be: If the Legislature should pass this act, is it your opinion that the Supreme Court will uphold its constitutionality? They felt this would, in effect, constitute a constitutional ruling on a legislative enactment prior to its passage without the benefit of allowing the matter to proceed through the adversarial process envisioned by the separation of powers safeguards included in our Constitution. See, Opinions of the Justices, 209 Ala. 593, 602-05, 96 So. 487 (1923). The minority further stated that “Each branch [of government] has the legal and moral right to decide such questions for itself.” 209 Ala. at 603, 96 So. 487.
Since that first opinion, the Justices of this Court have conscientiously responded to requests of the Legislature, as well as the Governor, for advisory opinions.
“These opinions are usually given in deference to the executive and legislative departments of the state in order to guide them in the proper dispatch of their duties and to protect the officers and departments of the state in the performance of their duties under enacted legislation or under stipulation of proposed bond issues, etc.”
Opinion of the Justices, 266 Ala. 370, 371, 96 So.2d 752, 753 (1957). See also, Opinion of the Justices, 394 So.2d 957, 959-60 (Ala.1981). However, as has been pointed out many times, the procedure, as well as the advisability, of rendering advisory opinions is not without difficulty, particularly in view of the fact that the questions are presented outside the normal adversary system wherein pertinent facts from the record of a trial court would be presented, and *392 the issues would be briefed by attorneys and most times orally argued before the Court.
“There are several reasons why the practice of invoking the merely advisory opinions of the Justices, in their individual capacities, cannot and will not operate to invite the Justices to prejudge concrete causes or proceedings that may later come to the Supreme Court for decision: First. Such merely advisory opinions must often pertain to important constitutional questions that never can or will come to the Supreme Court’s consideration and decision; this, to illustrate, in all cases where the Legislature or the Executive does no act projecting or raising the constitutional inquiry upon which an advisory opinion or opinions have been requested and given. Second. Since only one prejudiced by official act or action can invoke the courts to judicially determine a constitutional question, it cannot be at all certain that the subject of such advisory opinion will be presented for judicial determination in a cause or proceeding in the courts. Third. The decision by the Supreme Court upon the constitutional validity of a legislative enactment or of an act by the Executive always contains this important factor that is wholly absent in a response by the Justices to a request for a merely advisory opinion on the question, pending legislative or executive action, namely, that in judicially testing and determining the constitutionality of legislative or executive action the Supreme Court — in the discharge of its high and concluding judicial function — always enters upon such an inquiry with the presumption, suggested by the deference due from one department to another, that the other department has not ignored or violated the Constitution; and this judicial presumption requires the sustaining of legislative or executive act, unless its invalidity appears beyond a reasonable doubt. In the observance of the practice, this act establishes, responses by the Justices would not at all involve recourse to or recognition of the stated presumption pending action by the interrogator on the subject of the advice sought. In these circumstances, no evoking of the judgment of the Justices in advance of contestation of any constitutional question in the Supreme Court itself is or would be effected by the practice the act establishes.”
209 Ala. at 598, 96 So. 487.
It is also instructive to note that advisory opinions are not binding precedents as are decisions on appeal to • this Court. See, Alabama Education Association v. James, 373 So.2d 1076 (Ala.1979). Therefore, it is possible that this Court could render an advisory opinion offering its belief that a bill does not violate the Alabama Constitution but later declare the same act unconstitutional if a case presented on appeal so warranted. Once an advisory opinion is rendered, however, officers of this government acting on the basis of it' are shielded from liability, to the same extent as are those who act pursuant to opinions of the attorney general. Code 1975, § 12-2-12. See, Opinion of the Justices, 254 Ala. 177, 47 So.2d 655 (1950). Additionally, if a request for an advisory opinion is presented to this Court concerning a bill that is almost identical in substance or form to previously enacted legislation, this Court must refuse to render the advisory opinion because the possibility of actual judicial involvement, i.e., hearing a case on the merits, exists. See, Opinion of the Justices, 272 Ala. 480, 132 So.2d 381 (1961); Opinion of the Justices, 269 Ala. 658, 115 So.2d 524 (1959); Opinion of the Justices, 266 Ala. 370, 96 So.2d 752 (1957).
As to one of the central issues raised by the several resolutions requesting advisory opinions, we take judicial notice from our own records that the issue respecting § 61 of the Constitution has been raised in the case of Robert Gafford v. John W. Pemberton, Clerk of the House of Representatives of the State of Alabama, et al., which was filed in the Circuit Court of Montgomery County, and which is now pending on appeal in this Court as Case No. 81-354. Additionally, Senate Resolution 20 was amended to add the following:
*393 “BE IT RESOLVED FURTHER, that if the Justices should, in their wisdom, not address any or all questions propounded above, then, in that event, the Senate respectfully request that the Court, if possible, expedite their consideration of the case of Robert Gafford, Plaintiff v. John Pemberton, Clerk of the House of Representatives of the State of Alabama, et a 1. Defendants, Supreme Court No. 81-354.” .
While the questions propounded in Senate Resolution No. 20 and House Resolution No. 119, as well as in House Resolution No. 77, sponsored by Representative Gafford, who is the appellant in Case No. 81-354, are not identical with the issues presented in that case, it is apparent to the Justices of this Court that members of the Legislature are concerned about the operative effect of the provisions of Act No. 81-953 on the business of the Legislature currently being conducted at the 1982 Regular Session, and that a central issue is the constitutionality of Act No. 81-953. The basic constitutionality of that Act is raised in the case on appeal.
Accordingly, after carefully considering the several requests for advisory opinions contained in the four pending resolutions of the House and the Senate, it is our considered judgment and opinion that the best, wisest and most appropriate action for this Court to take would be to expedite the appeal[2] in the pending Case No. 81-354 before this Court and to respectfully decline to address the inquiries made in the various resolutions.
Respectfully submitted,
C. C. TORBERT, Jr. Chief Justice
HUGH MADDOX
JAMES H. FAULKNER
RENEAU P. ALMON
JANIE L. SHORES
T. ERIC EMBRY
SAM A. BEATTY
OSCAR W. ADAMS, Jr. Justices

. Act No. 81-953, Acts of Alabama, 1981, reads as follows:
“BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
“Section 1. (A) The following words and phrases, whenever used in this act, shall have the following respective meanings:
“ ‘Basic Appropriations’ means, with respect to any regular session of the Legislature, such appropriations as the Legislature may deem appropriate for the expenditures by the State during the ensuing Budget Period for the ordinary expenses of the executive, legislative and judicial departments of the State, for payment of the public debt, and for education (excluding, however, any item within the scope of the foregoing that is at the time provided for by a continuing appropriation or otherwise).
*390 “ ‘Budget Period" means a fiscal year of the State or such period other than fiscal year as may hereafter be fixed by law as the period with respect to which State budgets are prepared and State appropriations are made.
“(B) On or before the second legislative day of each regular session of the Legislature, beginning with the first regular session after January 1, 1982, the Governor shall transmit to the Legislature for its consideration a proposed budget for the then next ensuing Budget Period.
“(C) The duty of the Legislature at any regular session to make the Basic Appropriations for any Budget Period that will commence before the first day of any succeeding regular session shall be paramount; and, accordingly, beginning with the first regular session held after January 1, 1982, no bill (other than a bill making any of the Basic Appropriations) shall be signed by either the presiding officer of the House or Senate and transmitted to the other house until bills making the Basic Appropriations for the then ensuing Budget Period shall have been signed by the presiding officer of each House of the Legislature in accordance with Section 66 of the Alabama Constitution and presented to the Governor in accordance with Section 125 of the Constitution; provided, that this paragraph (C) shall not affect the adoption of resolutions or the conduct of any other legislative functions that do not require a third reading; and provided further, that following adoption, by vote of either house of not less than three-fifths of the members elected to that house, of a resolution declaring that the provisions of this paragraph (C) shall not be applicable in that house to a particular bill, which shall be specified in said resolution by number and title, the bill so specified may proceed to final passage therein.
“(D) Upon the signing and presentation to the Governor in accordance with the said Sections 66 and 125 of bills making the Basic Appropriations, the provisions of the foregoing paragraph (C) prohibiting the final passage of bills in the House and Senate (other than bills making any part of the Basic Appropriations) shall cease to be effective and shall not be revived or become again effective as a result of (i) the subsequent legislative history of any bill so signed and presented, including any veto, return with executive amendment, or any other action, or failure to act, by either the Governor or the Legislature under the provisions of the said Section 125; or (ii) a determination, by either judicial decree or opinion of the Justices of the Alabama Supreme Court, that any bill so signed and presented is wholly or in part invalid.
“(E) The Legislature may, by statute or rule, make such further provisions for the timely passage of bills making the Basic Appropriations.
“(F) Nothing contained herein shall be construed as requiring the Legislature to make any appropriation not otherwise required to be made.
“Section 2. All laws or parts of laws which conflict with this act are hereby repealed.
“Section 3. The provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.
“Section 4. This act shall become effective on January 1, 1982 and shall self-terminate on July 1, 1982.”

. Opinion of the Justices, 272 Ala. 480, 132 So.2d 381 (1961); Opinion of the Justices, 269 Ala. 658, 115 So.2d 524 (1959); Opinion of the Justices, 266 Ala. 370, 96 So.2d 752 (1957). The case of Gafford v. Pemberton, Ala., 409 So.2d 1367, was submitted on briefs to this Court on February 9, 1982.